WOOD *et al.*, Appellants, v. PHELPS COUNTY COURT, Respondent.

1. Granting that an appeal would lie from the judgment of a county court in a proceeding instituted to obtain a removal of the seat of justice, it would only lie in the case of a final judgment.

2. Neither under the general act regulating the removal of seats of justice (R. C. 1855, p. 513), nor under the act organizing Phelps county (Sess. Acts, 1857, Adj. Sess. p. 397) would an appeal lie to the circuit court from an order of the county court sustaining or overruling a motion to set aside or vacate a former order of the county court approving the location of the seat of justice.

3. Where a public act requiring the exercise of judgment is to be performed by several commissioners appointed in a statute, all of them must meet and confer.

4. Though a majority of the commissioners appointed by the act organizing Phelps county (Sess. Acts, 1857, Adj. Sess. p. 397) may make a location of a seat of justice, yet all the commissioners appointed must meet and confer with respect to such location.

*Appeal from Phelps Circuit Court.*

*Parsons & Pomeroy,* for appellants.

I. The county court had no right to reject the petition for the removal of the county seat. The circuit court committed error in dismissing the appeal. The commissioners gave no notice of their intended meeting. The general law requires such notice. The law required all the commissioners to qualify. The circuit court should have heard *de novo* the petition of the inhabitants for the removal of the supposed county seat, as also their objections to the location. (R. C. 1855, p. 533, § 8.) Three-fifths of the taxable inhabitants of the county are appellants here.

*E. B. Ewing,* (attorney general,) for respondent.

I. The petitioners were not entitled to an appeal. The circuit court did right to dismiss it. (Tetherow v. Grundy County, 9 Mo. 118.) Neither the statute concerning the organization of counties nor that concerning seats of justice authorizes an appeal. (R. C. 1855, p. 504, 513.) See also act to organize Phelps county. There was no final judgment of the county court from which an appeal would lie. But if the proceedings of the commissioners were in any respect irregular, such irregularity could not be remedied by an appeal. The commissioners or a majority of them were required to report their proceedings to the county court, not the circuit court. But if the general law concerning the organization of counties governed the commissioners in the discharge of their duties, there is no such irregularity as invalidates their proceedings. (Act concerning the organization of counties, R. C. 1855, p. 505-6.) It devolved upon the plaintiffs to aver and prove facts that would invalidate the proceedings of the commissioners. This nowhere appears from the record.

RICHARDSON, Judge, delivered the opinion of the court.

By the second section of the act organizing Phelps county, approved November 13, 1857, George M. Jamison, of Craw-

ford county, Cyrus Colley, of Pulaski county, and Gideon R. West, of Osage county, were constituted a board of commissioners to locate the seat of justice of Phelps county, and were instructed to locate it at the most suitable place in the county on the line of the survey of the south-west branch of the Pacific railroad. The seventh section of the act required the commissioners to meet at the residence of John Webber, in said county, on the 30th of November, 1857; or on any other day thereafter that a majority of them might name, and proceed to locate the county seat and report the same to the county court. The seventh section further provided that a majority of the commissioners should be sufficient to make a location, but should one or more of them fail to act for any reason, it should be lawful for the county court of the county in which such delinquent commissioners resided to supply the place by appointment.

It appears from the record that on the 20th January, 1858, Cyrus Colley and George M. Jamison reported to the county court that they had located the county seat on a tract of land described in a deed, which they presented, executed by Edward W. Bishop, and on the next day the report was approved by the court. It does not appear on what day the commissioners met for the purpose of entering on the performance of their duty, but it was shown that Gideon R. West, of Osage county, failed to qualify or to act; that the other commissioners had no communication with him on the subject of the location, and that only two of them ever qualified or acted in making the location. On the 9th February, 1858, a petition was presented to the court, purporting to be signed by James Woods and 615 other tax payers of the county, complaining of the action of the commissioners in locating the county seat and asking the court to make an order to remove the seat of justice to another place, and at the same time a motion was filed, grounded on the petition, for the appointment of five commissioners to select another site. Seventeen reasons are assigned in the motion, many of which are inconsistent with each other, for some of them assume

that the county seat had never been located at all, inasmuch as the proceedings of the commissioners were irregular and void; whilst others concede that it had been lawfully established, but urged that it ought to be removed to another place, because it was unwisely located and a majority of the tax payers were dissatisfied and desired a change. On the 10th February, Hamilton Lenox and others filed their remonstrance against the removal of the county seat, and the matter was continued until the 22d day of the month, when it was again continued until the next term of the court. On the 24th February the following entry appears: "Now on this day come the petitioners by their counsel and present their motion to the county court for an investigation of the alleged illegality of the location of the county seat of Phelps county, which motion is by the court overruled; whereupon said petitioners gave notice of an appeal;" and thereupon the case was taken by appeal to the circuit court. The motion mentioned in the entry is not set out in the record, and we can not tell either its aim or the reasons stated in it, and it does not appear that it sought to have the order of the court approving the report set aside; but that it only asked "for an investigation of the alleged illegality of the location of the county seat." The circuit court dismissed the appeal.

It is evident that an appeal did not lie from any order the county court had made touching the petition to remove the county seat, for no final decision had been made by the court on the subject. The petition had been neither granted nor refused, and before the appeal was taken an order had been made continuing the matter until the next term; and if an appeal will lie at all from the judgment of the county court in a proceeding to remove a county seat, it would only lie in the case of a final judgment.

The proceedings of the appellants in the county court were intended in the beginning only to procure the removal of the county seat according to the provisions of the act to provide for the removal of seats of justice. (R. C. 1855, p. 513.) There is nothing in the record to show that a motion was

made at any time to reject the report, or to set aside the order approving it, and if the parties designed to take that course, they approached the subject by singular indirection. But treating the case as though a motion had been made in proper form and at the proper time, we do not think an appeal could be taken from an order of the county court sustaining or overruling it. Neither the act organizing Phelps county, nor the general law on the subject of locating seats of justice (R. C. 1855, p. 503), makes any provision for an appeal. One citizen of the county alone surely could not take an appeal, for all the other citizens might acquiesce in the judgment of the court, and if one could not appeal, two could not, nor could three, or any other given number, and therefore the right of appeal can not depend on the number who may unite in it. (Tetherow v. Grundy County Court, 9 Mo. 119.)

The judgment of the circuit court dismissing the appeal will be affirmed, but we think it proper to say that, in our opinion, the report of the two commissioners should have been rejected, and the county court ought to vacate the order approving it. Three commissioners were appointed in order that each of them might have the benefit of the advice and information of the others, and it was supposed that their associated counsel and judgment would produce a wiser and more satisfactory result than if only one or two acted. Where a public act requiring the exercise of judgment is to be performed by three or more commissioners appointed in a statute, all of them must meet and confer, though the question may be determined by the opinion of a majority, unless the concurrence of all is required. When all are present and acting, two may decide; but two can not act without at least consulting with the third; for it might happen that if the third one had been present, his opinions and arguments would have influenced the others and changed the result. (Rogers, ex parte, 7 Cow. 530, note.) The statute appointing these commissioners permits a majority of them to locate the county seat, but it contemplated that all should meet

and confer, for it expressly provides that in case one or more of them should fail to act, the county court of the county in which the delinquent commissioner resided should supply his place by appointing another. The commissioners were not required to make the location within any fixed time, and therefore, as they have not yet discharged the duty assigned them, there is no reason why they may not yet perform it. The county court ought to set aside the order approving the report, and notify the commissioners to proceed to execute their trust; and if the court refuses to do its duty, which we can not suppose it will do, an adequate legal remedy will then doubtless be suggested and adopted. Judge Scott concurs. Judge Napton absent.